IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALITA CARTER,                         §
                                      §
          Plaintiff,                  §
                                      §
v.                                    §
                                      §    CIVIL ACTION NO. H-05-3273
JOHN W. SNOW, SECRETARY OF            §
THE TREASURY,                         §
                                      §
          Defendant.                  §

MEMORANDUM AND ORDER

Pending is Defendant John W. Snow, Secretary of the Treasury's
Motion for Summary Judgment (Document No. 18) and Partial Motion to
Dismiss (Document No. 19).   After considering the motions,
responses, and the applicable law, the Court concludes as follows:

I.   Background

*Pro se* Plaintiff Alita Carter ("Plaintiff"), a Chapter 13
Bankruptcy Specialist, GS-1101-9, with the Internal Revenue Service
("IRS") in Houston, Texas, brings this retaliation suit against
Defendant John W. Snow, in his capacity as Secretary of the
Treasury ("Defendant").   Plaintiff alleges that Defendant
retaliated against her in violation of Title VII of the Civil
Rights Act of 1964 ("Title VII") by: (1) failing to interview
Plaintiff and not selecting her for a GS-1101-11 Bankruptcy
Specialist position, although she was on the Best Qualified List;
(2) giving Plaintiff a lowered rating on an annual performance

appraisal; and (3) giving Plaintiff an inaccurate evaluation, which resulted in an inaccurate numerical score and/or rating.  Plaintiff also alleges that she was subjected to a hostile work environment.

Plaintiff alleges that she was hired by the IRS in 1983.  At all times relevant to this action, Charles Boyd ("Boyd") was Plaintiff's immediate supervisor, and Douglas Davaz ("Davaz") was Plaintiff's second-line supervisor.  Document No. 19 ex. 7 at 8, 12-13.  Boyd became Plaintiff's manager in 2001, while Davaz assumed his position in the Houston office in 2002.  In April, 2002, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging discrimination on the basis of sex, retaliation, harassment, and disparate treatment, and Plaintiff named Boyd as the discriminating management official.  Document No. 20 ex. 2.[1] Plaintiff alleged, among other things, that Boyd told her that "she would be hurting her promotional opportunities by refusing to respond to the Claim Objection" although office procedures required higher-ranking employees to respond to Claim Objections. Id. ex. 2 at 2.  Plaintiff voluntarily withdrew her April, 2002 complaint in July, 2002.  Id. ex. 3.

In March, 2002, Defendant posted Vacancy Announcement 50-52-SBL-2513,[2] listing "1 or more" temporary Bankruptcy Specialist GS-

---

[1] Plaintiff filed a previous, unrelated EEO complaint against the IRS and the National Treasury Employees Union ("NTEU") in 2000.

[2] The Vacancy Announcement is also referred to as SBB-SBL-2513.

1101-11 positions, with one position in the post of duty ("POD") of Houston, Texas (the "Position" or "VA #50-52-SBL-2513 Position"). Document No. 18 ex. 8; ex. 9 at 152.  Plaintiff timely applied for the Position.  Once the Vacancy Announcement closed, a Vacancies Register was generated that listed the qualified applicants for the Position, including Plaintiff.  Id. ex. 10.  Human Resources then ranked each qualified applicant on the Ranking Spreadsheet. Plaintiff ranked fifth among the five highly-qualified applicants for the Position, with a ranking score of 44.77.  Id. ex. 11. Davaz, the Selecting Official for the Position, received a Promotion Certificate that listed the five "Best Qualified" applicants, and Plaintiff ranked fifth.  Id. ex. 12.  The Promotion Certificate, Vacancies Register, and Ranking Spreadsheet all stated that there were three vacancies for the Position, but Defendant contends that the paperwork from Human Resources had a clerical error and there was in fact only one vacancy.

It is uncontroverted that after Davaz received the Promotion Certificate, he removed Plaintiff's name from the interview schedule, allegedly to comply with the National Agreement between the IRS and the NTEU.[3]  He then referred the top four candidates to

_____

[3]  Defendant contends that it was unable to interview Plaintiff because there was only one vacancy for the Position, and therefore just the top 4 applicants were "Best Qualified" and could be interviewed under the terms of the National Agreement.  Pursuant to Article 13 § 6(F) of the National Agreement, the Best Qualified ("BQ") applicants are "the top four (4) applicants plus one (1) additional name for each additional vacancy."  Document No. 18 ex.

an interview panel, which conducted interviews of the four candidates in August and September, 2002. Davaz selected Jacqueline Jackson for the Position. Document No. 18 ex. 12. In September, 2002, Plaintiff was notified by letter that although she had made the Best Qualified list, another candidate was selected for the Position. Id. ex. 13.

In August, 2003, Plaintiff filed a formal EEO complaint of discrimination against Defendant, alleging that Defendant retaliated against her for her prior EEO activity when it (1) omitted her from the interview process for the Position, which resulted in her non-selection; and (2) unjustifiably gave her a lowered rating on her annual appraisal (from "4.6" to "4.2") in July, 2003. Document No. 18 ex. 1.[4] Plaintiff also alleged that she was retaliated against in July, 2004, when she received an inaccurate evaluation that resulted in an inaccurate numerical score and/or rating. Id. ex. 2 at 2. In September, 2004, after a full hearing on the merits, the Administrative Judge issued a written decision finding no discrimination based on retaliation.

_____

14 at 49. Plaintiff contends that there was more than one vacancy for the Position, and she should have received an interview. See id. Art. 13 § 6(B) ("Any selection technique utilized by the selecting official will be uniformly applied to all BQ applicants referred to the selecting official."); id. § 6(D) ("If the Employer determines to interview any employees in a selection process, all similarly situated employees will be interviewed.").

[4] In June, 2003, Plaintiff filed a related, informal EEO complaint, which she amended in July, 2003, to include allegations about the lowered appraisal rating. Document No. 20 ex. 12.

*See* <u>id.</u> ex. 2.   The Department of Treasury issued a final agency decision implementing the Administrative Judge's finding, and Plaintiff's appeal of that decision was denied.   <u>Id.</u> exs. 4-6. Plaintiff filed the instant suit, alleging retaliation on the same three grounds, in addition to a hostile work environment claim. Defendant moves for partial dismissal of the suit under Fed. R. Civ. P. 12(b)(1), asserting (1) that the Court lacks jurisdiction over Plaintiff's hostile work environment claim because Plaintiff failed to exhaust her administrative remedies; and (2) that the Court lacks jurisdiction over Plaintiff's retaliatory non-selection claim for the Position because she failed to initiate a timely complaint of discrimination within 45 days of her non-selection. Defendant also moves for summary judgment on Plaintiff's retaliation claims, arguing (1) that Plaintiff cannot prove a prima facie case of retaliation with respect to the 2003 and 2004 annual performance appraisals; and (2) that Plaintiff cannot raise a fact issue that Defendant's legitimate, non-discriminatory reasons are mere pretexts for retaliation.

## II.   <u>Discussion</u>

A.   <u>Motion to Dismiss</u>

    1.   <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter

jurisdiction. FED. R. CIV. P. 12(b)(1).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *See* <u>Hartford Ins. Group v. Lou-Con Inc.</u>, 293 F.3d 908, 910 (5th Cir. 2002).  In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations.  *See* <u>id.</u>  When accom-panied by supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack.  <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981).  A plaintiff responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction.  <u>Id.</u>

   2.   <u>Analysis</u>

   "As a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies."   <u>Randel v. U.S. Dep't of Navy</u>, 157 F.3d 392, 395 (5th Cir. 1998).  "If a federal employee fails to exhaust his administrative remedies, the district court

cannot adjudicate the employee's Title VII claim." <u>Fitzgerald v.</u> <u>Sec'y, U.S. Dep't of Veterans Affairs</u>, 121 F.3d 203, 206 (5th Cir. 1997); *see also* <u>Randel</u>, 157 F.3d at 395.

(a)   Retaliation Claim Based on a Failure to Interview and Select Plaintiff for VA #50-52-SBL-2513 Position

Defendant argues that the Court lacks jurisdiction over Plaintiff's retaliation claim based on a failure to interview and select her for the VA #50-52-SBL-2513 Position because Plaintiff failed to initiate a complaint of discrimination within the limitations period.  The Code of Federal Regulations provides that federal employees "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); *see also* <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002); <u>Lee v. Dep't of Veterans Affairs</u>, No. 05-20909, 2007 WL 1747998, at *4 (5th Cir. June 18, 2007).  The 45-day limitation period begins to run from the time the discriminatory event or personnel action occurs, not when the plaintiff discovers or can prove that a discriminatory intent motivated the action.  <u>Pacheco v. Rice</u>, 966 F.2d 904, 906 (5th Cir. 1992); *accord* <u>Hanlen v. Henderson</u>, 215 F.3d 1336, 2000 WL 628205, at *3 (10th Cir. May 16, 2000) (unpublished). Failure to initiate contact within the 45-day limitations period and exhaust administrative remedies will bar subsequent judicial

review of the claim in federal court, and may only be circumvented by a showing of waiver, estoppel, or equitable tolling. *See* Pacheco v. Mineta, 448 F.3d 783, 791 n.11 (5th Cir. 2006); Pacheco v. Rice, 966 F.2d at 905.

Federal regulations mandate an extension of the 45-day period in certain circumstances, none of which, as will be seen, applies here. *See* 29 C.F.R. § 1614.105(a)(2). The district court reviews *de novo* the EEOC's determination about equitable tolling, and the district court should "make an independent judgment about an employee's tolling request." Teemac v. Henderson, 298 F.3d 452, 455 (5th Cir. 2002). Additionally, under certain circumstances, the Court may toll the limitation period for exhaustion of a Title VII claim. "Equitable tolling is appropriate when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim." Pacheco v. Rice, 966 F.2d at 906-907. Traditional equitable tolling applies only in "rare and exceptional circumstances," such as where "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Teemac, 298 F.3d at 457 (quotations omitted). The party who invokes equitable tolling bears the burden of proof. *See* Wilson v. Sec'y, Dep't of Veterans Affairs, 65 F.3d 402, 404 (5th Cir. 1995).

Defendant argues that Plaintiff failed to exhaust her administrative remedies because she did not initiate contact with

an EEO counselor within 45 days after being notified by letter that
she had made the Best Qualified (BQ) list and that another
candidate was selected for the Position.  It is uncontroverted that
Plaintiff received the letter notice of this personnel action in
mid-September, 2002, but she initiated no contact with an EEO
counselor until June 26, 2003, more than nine months later.[5]
Plaintiff does not dispute that she failed to comply with the 45-
day limitations period for contacting an EEO counselor to complain
of the alleged discrimination.    Instead, Plaintiff rather
disingenuously argues that the 45-day period should be tolled
because she did not "become aware" of the alleged discrimination
until June 25, 2003, when she spoke to a Human Resources Agent and
learned that, as a candidate on the BQ list, she should have
received an interview along with the rest of the BQ candidates.
*See* Document No. 20 at 16 (citing 29 C.F.R. § 1614.105(a)(2)).[6]

The National Agreement provides that "[a]ny selection
technique utilized by the selecting official will be uniformly
applied to all BQ applicants. . . ."  Document No. 18 ex. 14 at 48,

---

[5] The notification letter is dated September 13, 2002, and
Plaintiff testified that she received the letter "[p]robably a
couple days after" that date.  Document No. 18 ex. 13; ex. 7 at 59.
The effective date of the personnel decision to promote another
candidate to the Position was September 22, 2002.  Id. ex. 12.

[6] The record is not clear whether Plaintiff asked the EEO
office to extend the 45-day time limit.  The Court will assume,
without deciding, that she made a request under 29 C.F.R.
§ 1614.105(a)(2), and that the EEO office granted her request.

Art. 13 § 6(B).  Thus, if the employer decides to interview an employee in the selection process, "all similarly situated employees will be interviewed."  _Id._ § 6(D).  That Plaintiff was aware of this requirement is evident from her response when she learned that she was not selected for an interview in June or July, 2002.  She testified that she approached Boyd about her applica-tion, and he informed her that she "wouldn't be interviewing" for the Position.  _See_ _id._ ex. 7 at 51-52; _see also_ _id._ at 50 (testifying that she knew in August, 2002, that Defendant had begun conducting interviews for the Position).  When asked whether she questioned Boyd's statement, Plaintiff testified: "No, I didn't -- I didn't ask.  I just assumed that I didn't BQ and that somebody else had applied and bumped me."  _See_ _id._ at 52.

It is undisputed that by mid-September, 2002, Plaintiff had received a letter notifying her that she had, in fact, made the BQ list for the Position, and hence, by that date she necessarily realized that she had been entitled to an interview for the Position but was not given an interview.  _See_ _id._ ex. 13; ex. 7 at 59.  Notwithstanding notice of the apparent discrimination evident to Plaintiff by mid-September, 2002, Plaintiff failed to initiate contact with an EEO counselor within 45 days, and instead waited for more than nine months before making an EEO contact.  When confronted with this fact during her deposition, Plaintiff responded as follows:

Q:  Okay.  I'll show you what's been marked as Exhibit 6.

A:  This is when I received the notification from the personnel office advising me that I was best qualified for the position, but the selectee was Jacqueline Jackson.

. . .

Q:  Okay.  Now, here it states that you made the best qualified list; is that correct?

A:  Correct.

Q:  When did you receive this letter?

A:  Probably a couple days after it's dated there.

Q:  So sometime in September of '02?

A:  Yes.

Q:  Okay.  Did you call anyone in reference to this letter in September of '02?

A:  I don't think that I did.  No, I don't think I did contact personnel at that time.

Q:  Why not?

A:  I think I just read -- read my mail and just set it to the side.  I didn't delve into best qualified status.

Q:  Why not?

A:  I -- I can't answer that.  I really can't answer that.  Maybe if I would have taken more notice, I would have filed my complaint sooner than I did, but I just didn't -- I didn't think anything about it.

Id. ex. 7 at 59-60.  Notwithstanding Plaintiff's dismissive attitude toward the September 13, 2002 letter, it is undisputed that she was placed on notice of her non-selection upon its receipt.  "The requirement of diligent inquiry imposes an

affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event." <u>Pacheco v. Rice</u>, 966 F.2d at 907; *see also* <u>Irwin v. Dep't of Veterans Affairs</u>, 111 S. Ct. 453, 458 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). By mid-September, 2002, Plaintiff knew or reasonably should have known that she apparently had been discriminated against in a personnel action regarding promotion. *See* 29 C.F.R. § 1614.105(a)(2). Instead of consulting an EEO counselor within 45 days after receiving the notification letter, Plaintiff sat on her rights for more than nine months. Equitable tolling is not warranted under these circumstances, under either 29 C.F.R. § 1614.105(a)(2)'s tolling provision or general equitable tolling principles. *See, e.g.,* <u>Teemac</u>, 298 F.3d at 457 (describing bases for equitable tolling, none of which are present here). Because Plaintiff failed to exhaust her administrative remedies with respect to her retaliation claim based on a failure to interview and select her for the Position, and there is nothing of record to justify equitable relief, the Court lacks jurisdiction over this claim.

Even if the Court had jurisdiction to consider Plaintiff's claim, however, the claim would fail on the merits because Plaintiff has failed to raise a genuine issue of material fact that Defendant's well-stated, legitimate, non-retaliatory explanation of

reasons for deleting her name from the BQ interview list were pretextual. For the foregoing reasons, Plaintiff's retaliation claim based on a failure to interview and select her for the VA #50-52-SBL-2513 Position will be dismissed.

(b)  Hostile Work Environment Claim

Defendant also contends that the Court lacks subject matter jurisdiction over Plaintiff's hostile work environment claim because Plaintiff did not raise the claim at the administrative level and failed administratively to exhaust it. Defendant points to, among other things, Plaintiff's formal EEO complaint dated August 21, 2003, in which Plaintiff checked only one basis of discrimination: retaliation/reprisal. Document No. 19 ex. 1 at 1-2. In the six and one-half page, single-spaced factual narrative attached to the EEO complaint, Plaintiff does not allege a hostile work environment claim or make allegations that reasonably could be construed to support such a claim. *See* id. at 9-15. Instead, the allegations principally concern Plaintiff's discrete claims that she was retaliated against when she was omitted from the interview process for the VA #50-52-SBL-2513 Position, and she received a lowered annual appraisal in 2003. *See* id. Defendant also points to the September, 2004 EEO decision, in which the Administrative Judge framed Plaintiff's complaint solely as an action for

discrimination on the basis of reprisal and ultimately found no discrimination based on retaliation. Id. exs. 2-3.

In an unverified response, Plaintiff asserts that she amended her EEO complaint in July, 2003, to include claims for harassment and hostile work environment. Document No. 20 at 15-16. Plaintiff points to a handwritten, unsigned, and unverified note inscribed on the last page of her typed EEO Counseling Report. The note, presumably handwritten by Plaintiff, states:

> * I amended on 7/16/03 to
> include: Sylvia Thomas / counselor
> (1) Working Conditions
> (2) Harassment
> (3) Eval-Appraisal (Merit Pay)
> Other:
> Hostile Work Environment
> (GET Copy from Sylvia)

See Document No. 20 ex. 12 at 3. Besides this conclusory, uncorroborated hearsay statement, Plaintiff points to no evidence that she ever complained to an EEO counselor about a hostile work environment, much less that she did so within the 45 days allotted in § 1614.105(a)(1). The typed EEO Counseling Report and the formal EEO complaint do not include a hostile work environment claim, and both forms lack allegations to support such a claim. In sum, there is no competent evidence that Plaintiff alleged a hostile work environment claim at the administrative level, and this claim will be dismissed for failure to exhaust administrative remedies.

14

B.   Motion for Summary Judgment on the 2003 and 2004 Performance
     Appraisals

     1.   Standard of Review

     Rule 56(c) provides that summary judgment "shall be rendered
forthwith if the pleadings, depositions, answers to inter-
rogatories, and admissions on file, together with the affidavits,
if any, show that there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter of
law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate
the absence of a genuine issue of material fact." Celotex Corp. v.
Catrett, 106 S. Ct. 2548, 2553 (1986).

     Once the movant carries this burden, the burden shifts to the
nonmovant to show that summary judgment should not be granted.
Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th
Cir. 1998).  A party opposing a properly supported motion for
summary judgment may not rest upon mere allegations or denials in
a pleading, and unsubstantiated assertions that a fact issue exists
will not suffice.  Id.  "[T]he nonmoving party must set forth
specific facts showing the existence of a 'genuine' issue
concerning every essential component of its case." Id.

     In considering a motion for summary judgment, the district
court must view the evidence "through the prism of the substantive
evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.
2505, 2513 (1986).  All justifiable inferences to be drawn from the

15

underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

2.  Discussion

"Title VII prohibits retaliation against employees who engage in protected conduct, such as the filing of a charge of" discrimination.  Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003); see also 42 U.S.C. § 2000e-3(a).  Courts analyze a motion for summary judgment in Title VII retaliation claims using the McDonnell Douglas burden-shifting scheme.  Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 330 (5th Cir. 2004); see also Sarwal v. Principi, No. 06-20287, 2007 WL 595058, at *1 (5th Cir. Feb. 16, 2007) (unpublished). Using this framework, Plaintiff must first establish a prima facie case by presenting evidence

16

that: (1) she engaged in protected conduct; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *See* <u>Soledad v. U.S. Dep't of Treasury</u>, 304 F.3d 500, 506-507 (5th Cir. 2002); <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1092 (5th Cir. 1995). The burden then shifts to Defendant to articulate a legitimate, non-retaliatory reason for its action. <u>Septimus v. Univ. of Houston</u>, 399 F.3d 607, 610 (5th Cir. 2005). If Defendant carries its burden of production, Plaintiff must present evidence showing that the proferred rationale is merely a pretext for the real, retaliatory purpose. *See* <u>id.</u> at 610-11; <u>Sarwal</u>, 2007 WL 595058, at *1.

(a)   <u>2003 Annual Appraisal</u>

Plaintiff asserts that she was retaliated against when she received a lowered rating (from "4.6" to "4.2") on her annual performance appraisal in July, 2003.[7] To support her retaliation claim, Plaintiff has presented summary judgment evidence that (1) she filed a formal EEO complaint in April, 2002, in which she named Boyd as the responsible management official; (2) she filed an informal EEO complaint on June 26, 2003; (3) Boyd issued Plaintiff a lowered performance appraisal on July 16, 2003; and (4) Boyd was

---

[7] In 2002, Boyd gave Plaintiff a score of 4.6 (out of 5.0), with an overall rating of "outstanding." Document No. 18 ex. 20. In 2003, Boyd lowered Plaintiff's score to 4.2, with an overall rating of "exceeds fully successful." <u>Id.</u> ex. 19.

aware of at least the April, 2002 complaint at the time he issued the lowered appraisal.  This evidence, viewed in the light most favorable to Plaintiff, is at least sufficient to raise a genuine issue of material fact as to whether a causal link existed between Plaintiff's protected conduct and the lowered appraisal.

### Defendant's Legitimate, Non-Retaliatory Reasons

The burden therefore shifts to Defendant to articulate a legitimate, non-retaliatory reason for the lowered appraisal.  At the administrative-level evidentiary hearing, Boyd explained his reasons for lowering Plaintiff's score on Critical Job Elements ("CJEs") I and II.  He testified that he reduced Plaintiff's score on CJE I ("Employee Satisfaction--Employee Contribution") from 4.0 to 3.0 because she refused to attend a mandatory Continuing Professional Education ("CPE") course and participate in a mandatory fire drill.  Document No. 18 ex. 9 at 317-21.  It is uncontroverted that Boyd addressed these incidents at Plaintiff's mid-year performance appraisal in January, 2003, and Plaintiff does not dispute that the incidents occurred.  Id. ex. 15; ex. 16 at 2; ex. 9 at 88-91.  Boyd testified that he gave Plaintiff a score of "meets" instead of "exceeds" on this element because, although Plaintiff stopped behaving destructively in the second half of the year, she failed "to really improve and improve in a way to erase that [earlier] destructiveness."  Id. ex. 9 at 324-25.

18

Boyd testified that he reduced Plaintiff's score on CJE II(B) ("Review of Court Documents") from "exceeds" to "meets" because she failed to perform required feasibility tests.[8]  He testified that he verbally asked the group to conduct feasibility tests in late 2001, and he also documented the request at Plaintiff's mid-year review in 2003.  *See* id. ex. 9 at 329-30; ex. 15 (narrative to mid-year review, requesting that Plaintiff "**review the asset schedules**" in order to "take advantage of excessive assets.").  Boyd testified that although Plaintiff agreed to begin performing the tests, she still had not done so by the end of the rating period.  Id. ex. 9 at 331.  Boyd noted this performance deficiency in the narrative attached to Plaintiff's 2003 annual performance appraisal.  Id. ex. 19 at 2.  These reasons, if believed, constitute legitimate, non-retaliatory reasons for Plaintiff's lowered performance appraisal in 2003.  *See, e.g.,* Perez v. Region 20 Educ. Serv. Center, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason" for adverse employment action).

---

[8] Boyd testified that a feasibility test is a "review [of] the expenses that the debtors are listing on their schedules to make sure that the expenses are within range. . . . [It] ensures that the expenses are current or accurate or within our national standards."  Document No. 18 ex. 9 at 327-28.

<u>Plaintiff's Evidence of Pretext</u>

In her unverified response, Plaintiff argues that Defendant's reasons are false because Boyd did not tell her during her mid-year review that these areas needed improvement, and management gave her no "written, negative documentation" to warrant the lowered appraisal. Contrary to Plaintiff's assertion, the uncontroverted summary judgment evidence is that Boyd addressed the performance deficiencies in Plaintiff's mid-year review. Specifically, as to CJE I, Boyd noted in the narrative that Plaintiff had refused to participate in the mandatory CPE and fire drill, and that such conduct is "unacceptable," "has a negative impact on the group," and "may result in affecting your rating in Employee Satisfaction." Document No. 18 ex. 15 at 1. With regard to CJE II, Boyd advised Plaintiff that she needed to "**review the asset schedules**" when she prepared her cases, and he explained the reasons for conducting these feasibility tests. <u>Id.</u> at 2 (emphasis in original). Moreover, the uncontroverted summary judgment evidence is that Plaintiff told Boyd during the mid-year review that she would start performing the feasibility tests, and Boyd testified that he orally requested that she do so. <u>Id.</u> ex. 9 at 331. The summary judgment record establishes that Plaintiff received both oral and written documentation alerting her to these performance deficiencies prior to her receipt of the lowered appraisal in June, 2003.

20

Plaintiff also attempts to show pretext by pointing to the temporal proximity between her informal EEO complaint in late June, 2003, and the issuance of her lowered appraisal in July, 2003. However, while close temporal proximity alone may be adequate to establish a prima facie case of retaliation in some instances, "temporal proximity alone is insufficient to prove but for causation." Strong v. Univ. HealthCare Sys., 482 F.3d 802, 808 (5th Cir. 2007) (affirming summary judgment for employer on retaliation claim where employee was terminated three and one-half months after making complaint); Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997).  In sum, Plaintiff has failed to raise so much as a genuine issue of material fact that Defendant's reasons for Plaintiff's lowered performance appraisal in 2003 are pretextual.  Defendant is therefore entitled to summary judgment.

### (b) 2004 Annual Performance Appraisal

Plaintiff alleges retaliation with respect to her 2004 annual performance appraisal, in which she received a numerical score of 4.4 and an overall rating of "exceeds fully successful." Defendant argues that Plaintiff cannot prove a prima facie case of retaliation because she fails to show that an adverse employment action occurred.  In Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006), the Supreme Court held that an employee suffers an adverse employment action if "a reasonable employee would have

found the challenged action materially adverse, [meaning] . . . it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (internal quotations omitted). Here, the uncontroverted summary judgment evidence is that Plaintiff's numerical score *increased* from 4.2 in 2003 to 4.4 in 2004, and her overall rating remained at "exceeds fully successful." *See* Document No. 18 ex. 24. Defendant is correct that an overall improvement in Plaintiff's annual performance appraisal is not a materially adverse employment action that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *See* Burlington N., 126 S. Ct. at 2415; *see also* DeHart v. Baker Hughes Oilfield Operations, Inc., 214 Fed. Appx. 437, 441-45 (5th Cir. 2007) (asking under new Burlington standard whether a reasonable employee would have perceived the employment action to be "indicative of a retaliatory mind-set."). Because Plaintiff has not shown that she was subjected to a materially adverse employment action with respect to her more favorable 2004 annual performance appraisal, Plaintiff's retaliation claim fails.

Moreover, even if Defendant's action could be considered materially adverse, Plaintiff has not responded with any summary judgment evidence to show that Defendant's legitimate, non-retaliatory reasons for Plaintiff's 4.4 rating were untrue or pretextual. Boyd testified at the evidentiary hearing that he

increased Plaintiff's CJE I score from 3.0 to 4.0 because Plaintiff engaged in "no negative acts, no discouragement acts, [and] no attacks" in 2004, but he did not give Plaintiff a 5.0 rating because she "does not participate in a lot of workgroup issues." Document No. 18 ex. 9 at 335, 337. He testified that Plaintiff's CJE II score remained the same because she still did not consistently perform feasibility tests throughout the year. Id. at 341-42, 344; ex. 21; see also id. ex. 9 at 37-38. Plaintiff does not contest the truth of these allegations. Plaintiff speculates in her response that "the only reason this annual appraisal was raised is because [Plaintiff]'s administrative hearing was scheduled for September 2004, therefore giving Defendant the opportunity to say that [Plaintiff]'s numerical score had changed from the prior year." Document No. 21 at 11. Plaintiff's speculative assertion as to Defendant's motives is insufficient to satisfy Plaintiff's burden in responding to a motion for summary judgment. See, e.g., Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); Grimes v. Tex. Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996) ("In response to motions for summary judgment, it is therefore incumbent upon the non-moving party to present evidence--not just conjecture and speculation--that the defendant retaliated and discriminated

23

against plaintiff"). Moreover, Plaintiff's contention does not support an inference that Defendant was motivated by *retaliatory* animus in raising Plaintiff's score. In sum, Plaintiff offers no evidence from which a reasonable juror could infer that the legitimate reasons proferred by Defendant were pretextual. Plaintiff's subjective belief that she was retaliated against, without more, is not sufficient to survive summary judgment. *See* Douglass, 79 F.3d at 1430; Grice v. FMC Techs. Inc., 216 Fed. Appx. 401, 407-08 (5th Cir. 2007) ("[Plaintiff's] subjective belief that the incidents were retaliatory, without more, is not sufficient to survive summary judgment."). Defendant's motion for summary judgment will be granted on Plaintiff's retaliation claim related to the 2004 annual performance appraisal.[9]

### III. Order

For the reasons set forth, it is hereby

ORDERED that Defendant John W. Snow, Secretary of the Treasury's Partial Motion to Dismiss (Document No. 19) and Motion

---

[9] Defendant also moved for summary judgment on Plaintiff's retaliation claim based on Defendant's not interviewing her and selecting her for the Bankruptcy Specialist Position. If this claim were not dismissed for lack of jurisdiction, *see above* at pages 5-13, Defendant would be entitled to summary judgment on the merits based on Plaintiff's failure to raise a genuine issue of material fact that Defendant's legitimate, non-retaliatory reasons for deleting Plaintiff's name from the BQ interview list were pretextual. *See supra*, pages 12, 13.

for Summary Judgment (Document No. 18) are GRANTED, and Plaintiff Alita Carter's claims are DISMISSED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 26th day of July, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE